**FENDALL COMPANY, Plaintiff,**

v.

**WELSH MANUFACTURING COM-PANY, Defendant.**

Civ. A. No. 2609.

United States District Court
D. Rhode Island.

Feb. 26, 1962.

Charles B. Cannon, Chicago, Ill., Hinckley, Allen, Salisbury & Parsons, Providence, R. I., Matthew W. Goring, Providence, R. I., of counsel, for plaintiff.

Herbert B. Barlow, Herbert B. Barlow, Jr., and Barlow & Barlow, Providence, R. I., William R. Hulbert and Fish, Richardson & Neave, Boston, Mass., for defendant.

DAY, District Judge.

This is a suit for the alleged infringement of Design Patent No. 183,845, issued November 4, 1958, to the plaintiff as assignee of John N. Liautaud for the design of "An Eye Protective Industrial Spectacle Frame Front." In its complaint the plaintiff alleges that after notice the defendant has infringed and is infringing said patent by making and selling eye protective industrial spectacles under its trade-mark UNIBRIDGE. Plaintiff seeks a permanent injunction against further infringement, an accounting, costs, etc. Although the complaint also charges the defendant with unfair competition, plaintiff has conceded that the evidence did not establish that charge.

In its answer the defendant denies infringement and asserts that said design patent is invalid because the design shown therein is primarily functional and not properly the subject of a design patent, and, further, that it is invalid for want of invention over the prior art.

Said patent, Des. No. 183,845, contains the following characteristic feature clause:

"The characteristic features of my design for the eye protective industrial spectacle frame front disclosed reside in the bridge and frame portions adjacent thereto having the configurations shown."

The sole claim of said patent which incorporates by reference the design as shown in the drawings thereof (Figs. 1 to 6, inclusive) reads as follows:

"The ornamental design for an eye protective industrial spectacle frame front, substantially as shown and described."

It is clear that the characteristic feature statement of said patent emphasizes only the bridge and frame portions adjacent thereto. Despite this limitation, plaintiff contends that said patent must be considered as covering the entire frame front because the claim itself is not limited to the area covered in said characteristic feature statement.

Plaintiff's product made under said patent and sold under its trade-mark, MULTI-FIT, employs a saddle bridge, so-called, which rests directly on the wearer's nose with adjoining nose pads so shaped as to blend into the bridge and adjoining rims which hold the lenses.

The inventor of the design covered by said patent testified at considerable length as to the facts and needs of the industry which led to the development of the frame shown in said patent and in plaintiff's MULTI-FIT spectacle. He stated that prior to its development by him the industrial spectacles then being made and sold embodied a high set bridge with separate, low set nose pads. As a result, he said, at least six different bridge sizes were required to fit the individual wearer and that despite this range of sizes, in the average industrial plant protective industrial spectacles were never properly fitted. He also testified, that last but not least, he was seeking a design more in keeping with current style trends.

He also testified that the location of the nose pads adjacent to the bridge and the continuation of said pads above the upper line of said bridge in the MULTI-FIT spectacle served to prevent the entry of "foreign bodies" into the wearer's eyes.

During cross-examination he admitted the shape of the lens shown in said patent was in general use in the industry for more than a year prior to the date of his invention. He also admitted that the area of change in his design from that previously used in the industry was in the bridge area, so-called, where the saddle bridge was substituted for what the industry classified as the key-hole bridge. This change involved the lowering of the bridge and the raising of the nose pads so that they would be adjacent to and would blend into said saddle bridge. In the key-hole bridge construction, the bridge did not rest upon the nose of the wearer as in the case of the saddle bridge.

Plaintiff has advertised its MULTI-FIT industrial spectacle extensively. In its advertising, the plaintiff has emphasized its functional and utilitarian features and advantages. For example, in one of its brochures which shows its product on a female wearer, there appears on page 1 thereof the following:

"Fendall's New
      MULTI-FIT
"The *ONE* BRIDGE that does the work of FIVE
"SIMPLIFIES
      safety-spectacle
      fitting problems
"REDUCES
      size and cost of
      goggle inventory
"IMPROVES
      workers' acceptance of eye-safety programs
"See Details Inside"

And on page 2 of said brochure further reference is made to its functional features:

"INCREASED SAFETY
      THROUGH INCREASED USE
      "Because inner face of bridge and nose pads form a continuous bearing surface across the nose, weight of spectacles is distributed over larger area for more comfort and greater employee acceptance.

"SAVES UP TO 80% OF FITTING TIME
      "Greatly simplifies fitting problems. Multi-Fit's ONE bridge size

is guaranteed to fit more than 90% of your employees. You make NO bridge adjustments; no need to try several sizes in individual fitting.

"CUTS INVENTORY MORE THAN 50%

"Why carry a large assortment of spectacles, spread over the full range of five bridge sizes (18 to 26mm)? Multi-Fit's ONE bridge size provides greater fitting versatility than all five conventional bridge sizes combined.

"STRONGER FRAME . . . LESS BREAKAGE

"Exclusive construction provides added strength across bridge, eliminating breakage at this point.

"AUTOMATIC FIT!

"NO INVOLVED 'TRY-ONS' . . . NO BRIDGE ADJUSTING

"New Bridge construction and contouring are self-adapting to each wearer's face . . . better weight distribution makes spectacles feather-light on the face.

"SO AMAZINGLY COMFORTABLE THAT WORKERS WEAR THEM WILLINGLY."

This particular brochure then proceeds to list what it calls "extra features". One of them is thus set forth:

"NEW MODERN APPEARANCE

"Modern design with highly-styled appearance assures willing employee acceptance. Comfortable and sturdy, but without the bulky look and feel of 'goggles.'"

In other advertising and promotional material the plaintiff in similar fashion has stressed the functional advantages of its "MULTI-FIT" industrial spectacle without mention of its appearance. The idea of a spectacle frame having a pair of rims connected by a bridge and provided with a pair of nose pads wherein the rims, the bridge and nose pads are formed as an integral unit and wherein the combined inner surfaces of the nose pads and the rims blend with the rear or under surface of the bridge to form a single continuous surface for engaging the opposite sides and the bridge of a wearer's nose was shown in the Bay State Optical Company British patent, Pat. No. 624,809, issued June 16, 1949. This was a mechanical patent, but it clearly shows that the use of a saddle bridge with adjoining nose pads, as in the patent in suit, was old in the art.

Admittedly here the inventor sought to create an eye protective industrial spectacle which would eliminate the necessity of five or six bridge sizes and would provide a better fit for the wearer. The accomplishment of this result would naturally be a frame following the general configuration of the plaintiff's design.

■ It is well settled that for a design to be patentable it must be primarily ornamental; a design dictated by functional or mechanical requirements is not patentable. Spaulding v. Guardian Light Co., Inc., 1959, 7 Cir., 267 F.2d 111; Hueter v. Compco Corporation, 1950, 7 Cir., 179 F.2d 416; Jones v. Progress Industrial, Inc., 1958, D.C.R.I., 163 F.Supp. 824; Tupper Corp. v. Tilton & Cook Co., 1953, D.C.Mass., 113 F.Supp. 805, aff'd 1 Cir., 209 F.2d 954.

In my opinion the shape and configuration of the plaintiff's design is obviously one dictated by functional requirements of the object designed rather than by ornamental or decorative inventiveness. Since said design was dictated by functional requirements, it was not patentable and I conclude that said patent Des. No. 183,845 is invalid.

■ While it is true that plaintiff offered evidence as to the commercial success of its MULTI-FIT eye protective industrial spectacle, there was no showing by it that any part of such success was due to its design as distinguished from its utility and the sales efforts of the plaintiff which clearly emphasized its functional features. In any event, where, as here, invention of the kind requisite for a design patent is plainly lacking, commercial success cannot serve to impart patentability. Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 69 S.Ct. 269, 93 L.Ed. 235; Spaulding v.

**48**

Guardian Light Company, Inc., supra; George P. Converse & Co. v. Polaroid Corporation, 1957, 1 Cir., 242 F.2d 116; Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 1956, 2 Cir., 233 F.2d 9; Sherman v. Moore Fabrics, Inc., 1959, D.C.R.I., 179 F.Supp. 74.

In view of my finding that said patent is invalid, there is no occasion for me to consider the issue of its infringement by the defendant's product.

Judgment shall be entered for the defendant.