John K. RAINS, Plaintiff-Appellant,

v.

NIAQUA, INC., Defendant-Appellee.

No. 171, Docket 32602.

United States Court of Appeals
Second Circuit.

Argued Nov. 12, 1968.

Decided Jan. 13, 1969.

Leon J. Greenspan, White Plains, N. Y. (Greenspan & Aurnou, White Plains, N. Y., on the brief), for plaintiff-appellant.

Edwin T. Bean, Buffalo, N. Y. (Bean, Brooks, Buckley & Bean, Buffalo, N. Y., on the brief), for defendant-appellee.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff John K. Rains appeals from an adverse judgment in his patent infringement action against defendant Niaqua, Inc. after a trial before Chief Judge John O. Henderson in the United States District Court for the Western District of New York. Plaintiff is the owner of design patent No. Des. 201,793 for a swimming pool. Chief Judge Henderson held the patent invalid and not infringed. Because we believe that the former conclusion was not erroneous, we affirm.

I.

The design patent in suit was applied for in April 1963, and issued in August 1965. It deals with the appearance of an above ground, as distinguished from an inground or excavated, swimming pool. In practice, pools utilizing plaintiff's design have been made from redwood with

a vinyl liner holding the water. Plaintiff's design is simple and attractive; most probably the latter quality is due to the former. The patent itself merely claims the "ornamental design for a swimming pool, as shown and described" in twelve accompanying figures. Figure 1 of the patent is as follows:

As indicated, the design shows a rectangular structure apparently resting on a smaller rectangle. Around the top of the pool is a deck or walkway supported by vertical studs, which also help to support the sides of the pool, and by diagonal or inclined struts extending between the outer edge of the deck and the base of the pool. The vertical studs and inclined struts come together at and rest on the extended base, and together with the bottom of the deck they form inverted right triangles that appear at even intervals around the pool. The studs and struts are connected by plywood panels (gussets), which close most of the triangular space between them. A ladder along one of the sides provides access to the deck. And finally, the entire deck is enclosed by a fence made from crisscross slats and vertical posts.

■■ With a design patent it is the appeal to the eye—the appearance of the design—that is crucial. See Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co., 260 F.2d 637, 641 (2d Cir. 1958). Nevertheless, design patents are generally governed by the same principles that apply to other patents. See, e. g., Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962); Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961). Thus, 35 U.S.C. § 171 states:

Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply

to patents for designs, except as otherwise provided.

Under this section, a patentable design must be both ornamental and novel, the latter a requirement that it meet the general standards of novelty of 35 U.S.C. § 102. Similarly applicable to design as well as other patents is the command of 35 U.S.C. § 103:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Plaintiff claims that his swimming pool design meets the statutory requirements of ornamentality, novelty, and non-obviousness. He argues that his design is unique in several respects, discussed below, that it met a long felt need in the industry and consequently has enjoyed considerable commercial success, and that defendant failed to offer evidence sufficient to overcome the presumption of 35 U.S.C. § 282 that the patent is valid.[1]

## II.

The district court held that plaintiff's design patent was invalid under section 103;[2] in the light of the existing prior art, the court found that the design would have been obvious to a person having ordinary skill in the relevant art. The prior art relied upon by the district court and argued here most strongly by defendant was introduced in the course of cross-examination of plaintiff. It includes a photograph of a swimming pool, two United States design patents, and a French patent.

The photograph is of a pool known in the trade as the "Esther Williams" pool, which apparently was the first above ground redwood-type swimming pool to be widely marketed in this country. The photograph reveals an above ground swimming pool with an elevated deck and a vertical fence. The fence posts, however, rather than ending at the deck extend to the ground and serve to help support the deck. Moreover, the space between the posts is enclosed by a redwood weave, and thus the sides of the pool are not visible.

Both of the design patents were issued to Donald A. Preuss. The first, No. Des. 185,570 issued in 1959, is for a pool similar to the Esther Williams pool—a rectangular pool with a deck surrounded by a vertical fence that begins at ground level and hides the deck supports and pool sides. The second Preuss design patent, No. Des. 189,811 issued in 1961, is on what is known as the "Futura" pool. Unlike the two pools just described, the sides of the Futura pool and its deck supports are clearly exposed. The Futura does not have a crisscross fence or gussets; otherwise, the chief difference between it and plaintiff's pool design is that the Futura fence is inclined, the struts merely being extended to form the fence posts, while in plaintiff's design, the fence posts are separate from the struts and extend vertically above the deck.

The French patent, No. 768,506 issued in 1934, is a mechanical patent for a portable onground swimming pool made out of metal. The patent describes at length the technique of construction but does include four drawings similar to the type of figures incorporated in plaintiff's patent—a lateral view, an overhead view, a cross-sectional view, and an enlarged partial cross-sectional view—showing an inverted triangular deck support and a vertical fence rising above the deck.

---

1. Section 282 provides in part:
   A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.

2. The district court also found that the design was not ornamental. We do not reach the question.

Plaintiff claims that this evidence of prior art alone was not enough to support a finding in defendant's favor. Plaintiff argues that the statutory presumption of validity must prevail because defendant did not introduce expert testimony on the obviousness of plaintiff's design. That, however, misconstrues the effect of the presumption: It has no independent evidentiary value; rather, it serves to place the burden of proof on the person who asserts invalidity. Reasonable doubt on the issue of validity must be resolved in favor of the patent holder, but in the usual case a preponderance of the evidence determines the issue. See Lorenz v. F. W. Woolworth Co., 305 F.2d 102, 105 (2d Cir.1962). Thus, plaintiff's argument that defendant must lose because it was content to rest after plaintiff had presented his case is without merit.[3] The evidence relied on by defendant—the prior art—was already admitted, and this court has even held that in a proper case a defendant may successfully move for summary judgment on prior art alone. See Monaplastics, Inc. v. Caldor, Inc., 378 F.2d 20 (2d Cir. 1967). In this case, of course, there was a plenary trial before Chief Judge Henderson.[4]

### III.

We now turn to the district court's conclusion that in view of the prior art plaintiff's design was obvious. Plaintiff appears to rely on the following three features of his pool: (1) the effect of a greater rectangular box over a smaller rectangular box with (2) the impression of an inclined strut coming up beneath the deck and (3) a separate vertical fence post that does not extend completely to the ground. According to plaintiff, these features create "a startling use of symmetry" and "an ornamental and novel silhouette," and were nonobvious in the light of the prior art.[5]

In comparing plaintiff's design with prior art, we are aided by the guide laid down by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966):

While the ultimate question of patent validity is one of law [citing Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162 (1950)], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

The question before us is whether the trial judge was wrong in concluding that plaintiff's design would have been obvious under section 103 to "the ordinary designer who is chargeable with knowledge of the prior art." General Time Instruments Corp. v. United States Time Corp., 165 F.2d 853, 854 (2d Cir.), cert. denied, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770 (1948); see, e. g., Blisscraft of Hollywood v. United Plastics Co., supra, 294 F.2d at 696. The entire concept of obviousness is, no doubt, "an elusive one, especially when applied to elements of design." Hygienic Specialties Co. v. H. G. Salzman, Inc., supra, 302 F.2d at 618. However, we are not convinced that

3. Judge Henderson found that plaintiff's witnesses on nonobviousness were unconvincing, primarily because they did not demonstrate familiarity with all of the prior art. Cf. Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 539 (2d Cir. 1966).

4. The trial lasted three days, involved 10 witnesses, and produced 329 pages of transcript.

5. Plaintiff's patent would also seem to encompass three other features: (4) the gussets, (5) a crisscross fence, and (6) stairs leading from the ground to the deck. These, however, are not urged here as establishing nonobviousness, probably because (4) is not used in defendant's pool, and (5) and (6) are revealed by the prior art; e. g., the former is clearly shown in an illustration from Popular Mechanics, also relied upon by defendant as prior art.

Judge Henderson erred in holding that plaintiff's design does not meet the statutory standard. It would not seem to be a great feat for a designer of average ability to combine features (1), (2), and (3), which are disclosed in the pools described above. The Esther Williams type pool made use of two rectangular boxes and a vertical fence, though the smaller box was not as visible as it is in plaintiff's design and the fence extended to the ground. The Futura design can be described as a greater box resting on a smaller box and made use of inclined struts for deck supports. Finally, the French swimming pool patent utilized inverted triangles coming up under the deck for support and had vertical fence posts that did not extend completely to the ground.

We are buttressed in this view by the instruction of the Supreme Court to "scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950). Indeed the standards are, if anything, stricter for combinations of design elements. See Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co., 260 F.2d 637, 642 (2d Cir. 1958) (dissenting opinion). At the same time, we are mindful that a combination of elements that seems simple in retrospect may not have been so simple at the time it was first produced. But here, when the very similar features of the French patent—the cross-sectional drawing there and the cross-sectional figure included in plaintiff's patent are, as plaintiff admitted at trial, virtually identical—are considered, plaintiff's design is seen to be a mere adaptation of those features to the similar redwood type pools of the prior art.[6] Accordingly, the trial judge justifiably concluded that plaintiff's design would have been obvious to a designer of ordinary skill at the time plaintiff set out to design a new attractive pool.[7]

Plaintiff claims that the evidence of long felt need in the industry for his design and the considerable commercial success enjoyed by plaintiff's franchise holders and the "infringing imitators" establish that his design could not have been obvious. The evidence is not so clear as plaintiff claims, however, as there was evidence that all types of above ground swimming pools, including competing designs, were enjoying greatly increasing sales so that social and economic factors may have been a major reason for commercial success.[8] Moreover,

---

6. Plaintiff argues that defendant's reliance upon the French patent is improper because of differences between it and plaintiff's design; e. g., unlike the latter, the bottom and sides of the pool described in the French patent form "a U-shaped profile" and the inclined supports are panels or shutters that hide the sides of the pool. Nevertheless, we think that the description and drawings of the French patent—even with these differences—would be both very important to and readily usable by a skilled designer familiar with the other prior art.

7. Many observers have noted the strict standards of patentability that must be met before the long term monopoly protection of a patent is awarded a design and have suggested that lesser protection be granted the nonpatentable but novel design. See, e. g., Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 104 (2d Cir. 1951); Note, Protection for the Artistic Aspects of Articles of Utility, 72 Harv.L.Rev. 1520 (1959); Note, Design Protection—Time to Replace the Design Patent, 51 Minn.L.Rev. 942 (1967), discussing In re Laverne, 356 F.2d 1003, 53 C.C.P.A. (Patents) 1158 (1966).

8. That was the conclusion reached by the trial judge:
   The plaintiff has produced witnesses to testify with respect to the public acceptance and commercial success of his franchised pool and witnesses who testified that they preferred the appearance of plaintiff's pool to other pools on the market. The testimony of plaintiff's franchise holders shows public acceptance of above ground pools of all types. The pools of plaintiff's design, with substantial sums for advertising, have enjoyed considerable success. Much of that success, however, would appear attributable to changing social and economic factors.

such evidence is at best secondary in determining the obviousness of an invention. See Graham v. John Deere Co., supra, 383 U.S. at 17–18, 86 S.Ct. 684. This court has repeatedly said that commercial success cannot establish patentability when the evidence of obviousness is strong. See, e. g., Continental Can Co. v. Old Dominion Box Co., 393 F.2d 321, 326 (2d Cir. 1968). The same is true with regard to evidence of a long felt need in the industry.

Plaintiff also cites testimony that the use of a vertical fence that did not extend to the ground presented structural problems to be solved. Similarly, plaintiff testified that most people would consider the inverted triangular stud and strut support less stable than alternative methods of support. From this, plaintiff argues that, like the inventor in United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), he had to ignore disadvantages in designing his pool. However, there is nothing to suggest that these problems were particularly difficult to solve or that they would have been a deterrent to a designer of ordinary skill familiar with the prior art.

Finally, plaintiff points to a recent decision of the Third Circuit, which overruled a trial court· finding that plaintiff's patent is invalid. Rains v. Cascade Indus., Inc., 402 F.2d 241 (3d Cir. 1968) (2–1). In that case, the Third Circuit held that the existence of factual issues made the lower court grant of summary judgment inappropriate,[9] while here there has been a judgment after trial. Therefore, *Cascade* on that basis is technically distinguishable—but only barely —and we would not regard that as an adequate response to plaintiff's reliance on the decision. Of more substance as a distinction, however, are the presence in this record of plaintiff's admissions of similarity between the French patent and his design and the emphasis placed in *Cascade* on the gussets in plaintiff's design, a feature neither used by defendant

here nor emphasized by plaintiff to us. In any event, as is clear already, we would agree with the trial judge in *Cascade* and the dissenting member of the court of appeals panel.

In sum, for the reasons set forth above, it was not error for the trial court to conclude that plaintiff's design was obvious in the light of the prior art. It is not necessary for us to consider the district court's conclusion that, even if valid, the patent was not infringed. The judgment of the district court is affirmed.

---

9. A similar conclusion was reached by Judge Sugarman in still another suit by plaintiff. Rains v. Monarch Pool Corp., No. 65 Civ. 2531 (S.D.N.Y., June 1, 1966). That case has not yet come to trial.