**In re A. Eugene NALBANDIAN.**

**Appeal No. 80–615.**

United States Court of Customs and Patent Appeals.

Oct. 15, 1981.

James E. Hawes, Howard A. Silber, David L. Fehrman, Spensley, Horn, Jubas & Lubitz, Los Angeles, Cal., for Nalbandian.

Joseph F. Nakamura, Sol., John W. Dewhirst, Associate Sol., U. S. Patent and Trademark Office, Washington, D.C., for Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection under 35 U.S.C. § 103 by the examiner of appellant's application, serial No. 792,482, filed April 29, 1977, for "Combined Tweezer and Spotlight." We affirm.

### Background

The claimed ornamental design is for an implement referred to as an illuminable tweezer. The primary reference on which the examiner and the board relied is U.S. Patent Des. 175,259, issued to Johnson et al. (Johnson) on August 2; 1955, also for an illuminable tweezer. The respective designs are reproduced below:

Appellant's

Johnson's

As can be seen from these drawings, appellant's design resembles Johnson's in overall form. The only readily noticeable difference is in the fluting on the cylindrical sleeve which surrounds the body of the implement near the end housing the spotlight. The board agreed with the examiner that secondary references disclosed fluting similar to that in appellant's design, as well as the slight differences in the pincers. However, as we consider it unnecessary to rely on these references, they are not reproduced herein.[1]

The board, in affirming the examiner, stated:

It appears to us that the references are all from reasonably pertinent arts and the claimed design would have been obvious in view of such designs in the prior art. We arrive at this conclusion under *Graham et al. v. John Deere Company*, 383 U.S. 1, 86 S.Ct. 684, [15 L.Ed.2d 545] 825 OG 24, 148 USPQ 459 (1966), whether the test employs a "worker of ordinary skill in the art" or an "ordinary intelligent man."

### OPINION

The sole issue on appeal is whether appellant's design would have been obvious within the meaning of 35 U.S.C. § 103. In the words of the statute, are

. . . the differences between the subject matter sought to be patented and the prior art . . . such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains[?]

In *In re Laverne*, 53 CCPA 1158, 356 F.2d 1003, 148 USPQ 674 (1966), this court specifically rejected the interpretation generally given to the statutory language "one of ordinary skill in the art" as referring to a designer. The court concluded that this interpretation would not effectuate the intent of Congress to promote progress in designs since it would result in the denial of patent protection for the work of competent designers. Accordingly, it was held that the obviousness of designs over the prior art must be tested by the eyes of the "ordinary intelligent man," who was also referred to as the "ordinary observer."

Since the *Laverne* decision, the Second, Third, Tenth and District of Columbia circuits have specifically considered the "ordinary observer" test set forth therein and rejected it. These circuits continue to interpret "one of ordinary skill" as requiring obviousness to be tested from the viewpoint of the "ordinary designer."[2] Since board

---

1. We do not fault the PTO for buttressing the rejection with these references. Indeed, it is prudent to do so. However, we do not find them necessary.

2. *Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Products, Inc.*, 597 F.2d 201, 202 USPQ 356 (CA 10 1979); *Hadco Products, Inc., v. Walter Kidde & Co.*, 462 F.2d 1265, 174 USPQ

decisions may be reviewed by the District of Columbia Circuit as well as this court, the PTO has been faced with two standards in design cases.

■ We believe it is appropriate to close this schism. Accordingly, with this case we hold that the test of *Laverne* will no longer be followed. In design cases we will consider the fictitious person identified in § 103 as "one of ordinary skill in the art" to be the designer of ordinary capability who designs articles of the type presented in the application. This approach is consistent with *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), which requires that the level of ordinary skill *in the pertinent art be determined*.

In *Laverne*, this court recognized that the statute does not specifically create a test for nonobviousness of a design which is different from that for inventions defined in 35 U.S.C. § 101. That § 103 applies to designs follows from 35 U.S.C. § 171, which states: "The provisions of this title relating to patents for inventions shall apply to patents for designs . . . ." An ordinary intelligent man was, nevertheless, held to be the person skilled in the art within the meaning of § 103, rather than a designer working in the art, on the following rationale:

> In the mechanical, chemical, and electrical "arts" we have distinguished, since *Hotchkiss v. Greenwood*, 52 U.S. 248 [11 How 248, 13 L.Ed. 683] (1850), between "an ordinary mechanic acquainted with the business" and the "inventor"; between the craftsman or routineer on the one hand and the innovator on the other, now, by statute, the innovator who makes *unobvious* innovations. With respect to such inventions, these two categories of persons are workers in the same "art."

In the field of design the analysis is not so easy. Design inventing or originating is done by designers. The examiner here has referred to "the expected skill of a competent designer" as the basis of comparison. However, if we equate him with the class of mechanics, as the examiner did, and refuse design patent protection to his usual work product, are we not ruling out, as a practical matter, all patent protection for ornamental designs for articles of manufacture? Yet the clear purpose of the design patent law is to promote progress in the "art" of industrial design and who is going to produce that progress if it is not the class of "competent designers"?

> We cannot equate them with the mechanics in the mechanic vs. inventor test for patentability. Correspondingly, we cannot solve the problem here, obviousness, by using for our basis of comparison the inventor class in the field of industrial design. [*Id.* at 1162, 356 F.2d at 1006, 148 USPQ at 676–77. Emphasis in original.]

■ If an "ordinary designer" test for designs were necessarily equivalent to applying an "ordinary inventor" test for inventions, we would not return to it here. However, the problem thus stated can be viewed as one created by semantics. The "ordinary designer" means one who brings certain background and training to the problems of developing designs in a particular field, comparable to the "mechanic" or "routineer" in non-design arts. We do not have a name for that person in the design field other than "designer" which is also the name we must use for the person who creates a patentable design.

In any event, we do not believe the determination of the level of ordinary skill in the

358 (CA 3), *cert. denied*, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972); *Fields v. Schuyler*, 153 U.S.App.D.C. 229, 472 F.2d 1304, 175 USPQ 514 (CA D.C. 1972), *cert. denied*, 411 U.S. 987, 93 S.Ct. 2270, 36 L.Ed.2d 965 (1973); *Rains v. Niaqua, Inc.*, 406 F.2d 275, 160 USPQ 370 (CA 2), *cert. denied*, 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969). The Ninth Circuit has applied the "ordinary observer" standard of *Laverne* to invalidate the patent in *Schwinn*

*Bicycle Co. v. Goodyear Tire & Rubber Co.*, 444 F.2d 295, 168 USPQ 258 (1970). While we do not question the result, it is apparent from the opinion that the less discerning eye made it easier for that court to find invalidity, thus frustrating the stated purpose of *Laverne*. Other circuits, as discussed infra, have continued applying the "ordinary designer" test without noting *Laverne*.

art, as required under *Graham v. John Deere Co.*, supra, cannot be made with respect to designs. Thus, in view of the statutory requirement that patents for designs must be evaluated on the same basis as other patents, the test of *Graham* must be followed.

It is apparent the "ordinary designer" standard has been found helpful to courts in infringement litigation because of the objective evidence which can be brought to bear on the question of obviousness under the tests of *Graham. Cf. Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Products Inc.*, 597 F.2d at 209–10, 202 USPQ at 364–65; *Lancaster Colony Corp. v. Aldon Accessories, Ltd.*, 506 F.2d 1197, 1199–1200, 184 USPQ 193, 195 (CA 2 1974); *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 246–47, 159 USPQ 322, 326 (CA 3 1968). We believe it also can be more effectively dealt with by an applicant during patent prosecution than can the "ordinary observer" test. For example, where an examiner selects features from various designs, or relies on common knowledge in the art, the possibility is present of submitting an affidavit from an expert in whose opinion, subjective though it may be, it would not have been obvious to an ordinary designer, despite knowledge (or imputed knowledge) of the prior art to combine features or make modifications as shown in an applicant's design. *Cf. In re Neave*, 54 CCPA 999, 1007, 370 F.2d 961, 968, 152 USPQ 274, 279–80 (1967) (expert's perception of color in the dyestuff art is necessarily subjective, but nonetheless entitled to more weight than a layman's evaluation of the same

color); *Rains v. Cascade Industries, Inc.*, 402 F.2d at 246, 159 USPQ at 326 (opinion of expert on nonobviousness and evidence of commercial success must be considered). This possibility is not present using the "ordinary observer" test. No affiant can be qualified as an expert ordinary observer who might, thereby, persuade the person who is deciding the matter that the latter's judgment of the reaction of an ordinary observer is in error.

■ Rejection of the "ordinary observer" test under 35 U.S.C. § 103 does not preclude its application in other contexts. The "ordinary observer" test was applied in determining whether a claim to a design had been infringed as long ago as *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871). Further, the "ordinary observer" test has been applied when determining anticipation under § 102 by courts which apply the "ordinary designer" test under § 103.[3]

*Conclusion*

■ Applying the "ordinary designer" test of § 103 to the case at bar, the question is whether the changes made by appellant in the Johnson design for an illuminated tweezer would have been obvious to an ordinary designer of such implements. As noted, the claimed design is substantially identical in overall configuration to the design shown in Johnson for the same type of article. The differences in the finger grips of a slightly different shape and the straight, rather than slightly curved pincers, are de minimis. We also agree that it

---

**3.** This court has applied the "ordinary observer" test under § 102. *See, e. g., In re Bartlett*, 49 CCPA 969, 300 F.2d 942, 133 USPQ 204 (1962). We note that a number of circuit courts, again including the District of Columbia Circuit in *Fields v. Schuyler*, supra, have expressly stated, with respect to design patents, that the "ordinary observer" standard is applicable in determining anticipation under § 102 and the "ordinary designer" standard in determining obviousness under § 103. *See Clark Equip. Co. v. Keller*, 570 F.2d 778, 779, 197 USPQ 209, 225–26 (CA 8), *cert. denied*, 439 U.S. 825, 99 S.Ct. 96, 58 L.Ed.2d 118 (1978); *Schnadig Corp. v. Gaines Mfg. Co.*, 494 F.2d 383, 389, 181 USPQ 417, 421 (CA 6 1974);

*Hadco Products, Inc. v. Walter Kidde & Co.*, supra, 462 F.2d at 1272, 174 USPQ at 363. *See also, Sidewinder Marine, Inc. v. Starbuck Kustom Boats & Products, Inc.*, supra, 597 F.2d at 205, 202 USPQ at 363. The only departure from this dual standard appears in the Ninth Circuit in *Schwinn*, supra. However, the court there was considering a reference so similar to the patented design that the court below found it to be anticipated under § 102. This ground was not argued on appeal. Similar circumstances of a § 102 rejection or, alternatively, a § 103 rejection based on a prior "almost identical" design led to affirmance on the grounds of obviousness in *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 205 USPQ 302 (CA 9 1980).

is well within the skill of an ordinary designer in the art to make the modification of the fluting and that it would have been obvious to do so. Such changes do not achieve a patentably distinct design. *In re Lamb*, 48 CCPA 817, 286 F.2d 610, 128 USPQ 539 (1961). We agree, therefore, that the PTO has shown a prima facie case of obviousness.

■ Once the prima facie case of obviousness was established, the burden shifted to appellant to rebut it, if he could, with objective evidence of nonobviousness. In response, appellant filed a declaration regarding alleged commercial success of his illuminable tweezer. Both the examiner and the board found, and we agree, that the declaration was not persuasive because the alleged commercial success was not shown to be attributable to the design.

In view of the unrebutted prima facie case of obviousness, the rejection of the claimed ornamental design must stand. Accordingly, the decision of the board is *affirmed.*

*AFFIRMED.*

RICH, Judge, concurring.

A majority of my colleagues choose to swing the court into alignment with the three circuits which have affirmatively rejected the reasoning of our fifteen-year old *In re Laverne* opinion which, until now, this court has always unanimously accepted without question.

*Laverne* thus being dead, I deem it appropriate, as the father of the so-called "ordinary observer" test (as applied to 35 U.S.C. § 103), to say a few kind words over the corpse.

From the passages quoted from my opinion by the majority, it will be seen that what was written in 1966 was a response to the examiner's reliance on what would be produced by "the expected skill of a competent designer," perhaps an imaginary person of somewhat greater skill than the imaginary "ordinary designer" now enthroned by the majority. I was interested in retaining within the ambit of the patent system the made-for-hire products of "competent designers" so businessmen or corporations would find it economically advantageous to employ them, thus carrying out the objective of 35 U.S.C. § 171, to promote the ornamental design of articles of manufacture.

The majority is not now talking of "competent designers" but of "ordinary designers" from which it follows that there may be extraordinary designers who will produce unobvious designs which ordinary designers will not routinely produce. It is probably true, as the majority says, that all this is just semantics and courts will, with phraseology of their own choosing, continue to find designs patentable or unpatentable according to their judicial "hunches."

The real problem, however, is not whether the § 103 fictitious "person" is an ordinary observer or an ordinary designer but with the necessity under Title 35 of finding unobviousness in a design. The problem long antedates 1952 and its Patent Act and existed from the beginning, the pre-1952 test being the presence of "invention" in a design. The problem was well known to the drafters of the 1952 Act (of which I was one) and it was also known that many prior legislative efforts had been made to solve it.[1] When work on revision of the patent statutes began in 1950, a deliberate decision

---

1. Records I made in the mid 50's show that, beginning in 1914, some 45 bills were introduced in the House and Senate directed to some improved form of protection for designs. Many of these bills were, of course, duplicates, substantially the same bill being introduced in each house or reintroduced in successive years. Those interested in the history can examine Barbara A. Ringer's 70-page *Bibliography on Design Protection* published for Copyright Office use June 1, 1955, and an enlarged 160-page version or "supplement" compiled by W. Strauss, Varmer, Caruthers, and Berger on June 1, 1959, bearing the same title. Fabulous amounts of time and effort have been poured into solving the design protection problem with, to date, no legislative solution. *See also* Kelsey M. Mott's two-installment article *The Standard of Ornamentality in the United States Design Patent Law*, 48 ABA J. 548, 643 (June, July 1962).

was made not to attempt any solution of the "controversial design problem" but simply to retain the substance of the existing design patent statute and attack the design problem at a later date, after the new Title 35 had been enacted.

Thus it was that the patentability of designs came to be subject to the new § 103 which was written with an eye to the kinds of inventions encompassed by § 101 with no thought at all of how it might affect designs. Therefore, the design protection problem was in no way made better; perhaps it was made worse.

The intention of the drafters of the 1952 Patent Act to tackle the design protection problem was carried out, by both the private and public sectors, commencing in 1954, by a new "Coordinating Committee" of which I was chairman, and by 1957 new legislation was introduced in the 85th Congress, 1st Session in the form of Willis Bill H.R. 8873. In the 86th Congress, 1st Session, S. 2075 was introduced by Senators O'Mahoney, Wiley, and Hart, being the same bill in substance. From that time on, the legislative effort was continuous until the bill became Title III of the Copyright Revision Bills, later became Title II, and finally was jettisoned to facilitate passage of the main bill, the Act of October 19, 1976, Pub.L. No. 94–553, now 17 U.S.C. § 101 *et seq.* (1977). Congressmen said they would deal with designs later.

The point of this review is to call attention to the resulting presently pending legislation, H.R. 20, 97th Congress, 1st Session, introduced January 5, 1981, by Mr. Railsback, a bill "To amend the copyright law, title 17 of the United States Code, to provide for protection of ornamental designs of useful articles." The present case and its companion, *In re Spreter,* 661 F.2d 1220 (Cust. & Pat.App.), concurrently decided, are but the latest examples of the need for a law tailored to the problems of designers, of their employers and clients in the business world, and of the government agencies now concerned. The now-pending legislation is substantially the same bill introduced in 1957, after the refining process of *24*

*years of legislative consideration. It is time to pass it* and get the impossible issue of obviousness in design patentability cases off the backs of the courts and the Patent and Trademark Office, giving some sense of certainty to the business world of what designs can be protected and how.

Commissioner of Patents and Trademarks Gerald Mossinghoff in his maiden speech to the ABA Patent, Trademark and Copyright Law Section in New Orleans on August 8, 1981, said,

> * * * we are *again* urging enactment of an inexpensive and effective form of registration protection for designs and, specifically, we are supporting H.R. 20 introduced by Congressman Railsback last January * * * largely because *the concept of unobviousness is not well suited to ornamental designs.* We believe a registration system, such as that contemplated in H.R. 20, would serve industry better at lower cost. [My emphasis.]

The bar would do well to devote its energies to backing this effort of the PTO rather than pursuing appeals such as these which may sometimes result in patents to "extraordinary" designers whose patents, as the Commissioner also pointed out, may then suffer a 70% mortality rate in the courts at the hands of judges reviewing the § 103 unobviousness of the designs.

I have one further comment on the majority opinion, which says that a "determination of the level of ordinary skill in the art" is "required under *Graham v. John Deere Co.*" It is not the Supreme Court that requires such a determination, but the statutory patent law which the Court was simply applying. The *statute* makes that requirement of the courts, all of them, from the highest on down. The Supreme Court said as much. 383 U.S. at 19, 86 S.Ct. at 694.

BALDWIN, Judge, dissenting.

While agreeing with the majority opinion that the "ordinary designer" test of § 103 should be applied, I would reach a different conclusion.

The major difference between the appealed design and the design shown in Johnson is in the fluting on the cylindrical sleeve. This difference is not de minimis but rather creates quite a difference in appearance between the two designs. I cannot agree with the majority that it would have been obvious to the ordinary designer to make the modification of the fluting.

Nor can I agree with the board's conclusion that "the references are all from reasonably pertinent arts and the claimed design would have been obvious in view of such designs in the prior art."

Appellant has taken issue with that board conclusion basically by arguing that the Deibel reference[1] and the Mantelet reference[2] are non-analogous art and that it is improper to use the two references to remedy a deficiency in the Johnson design in order to show a design similar to appellant's illuminable tweezer having a sleeve with longitudinal fluting over a portion of its length.

Even assuming, *arguendo*, that the board did not err by sanctioning utilization of bits and pieces of designs from five references to establish a prima facie case of obviousness of a claimed design, I agree with appellant that the board erred in concluding that all the references are from reasonably pertinent arts. Deibel and Mantelet are not analogous art and should not have been utilized to support the § 103 rejection.

Accordingly, I would reverse the decision of the board.

1. U.S. Patent Des. 126,574, issued to Deibel on April 15, 1941, for an ornamental design for a flashlight head:

2. U.S. Patent Des. 247,317, issued to Mantelet on February 21, 1978, for an ornamental design for a cosmetic applicator: