A & H MANUFACTURING CO.,
INC., Plaintiff,

v.

CONTEMPO CARD CO., INC., and Vark
Markarian, Defendants.

C.A. No. 81–0779 S.

United States District Court,
D. Rhode Island.

Nov. 16, 1983.

Salter & Michaelson by Elliott A. Salter, Leonard C. Michaelson, Feiner & Winsten by Harold H. Winsten, Providence, R.I., for plaintiff.

Fish & Richardson by John Skenyon, Wm. W. Rymer, Providence, R.I., Orlando A. Andreoni, East Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This is a suit charging an alleged infringement of United States Design Patent D–261,729 (the "patent"), issued November 10, 1981 to the plaintiff, A & H Manufacturing Company, Inc. ("A & H"), as assignee of an application filed in the name of the inventor, Jeffrey A. Feibelman. Feibelman is the president of A & H. The patent covers a design for a pendant display card. A & H seeks a permanent injunction against further infringement, money dam-

ages and an accounting of profits, and attorneys' fees and costs. Jurisdiction is premised on 28 U.S.C. § 1338.

The defendants are Contempo Card Company, Inc. ("Contempo"), a competitor of A & H in the jewelry display card field, and Vark Markarian, Contempo's chief executive officer. Because this action raises no issues peculiar to the individual defendant, this memorandum will, for the most part, discuss the case as if Contempo was the sole defendant, but the court's findings and conclusions will apply with equal force to Markarian. Admitting that if the patent is valid, it has been infringed, Contempo has counterclaimed for a declaration that the patent is invalid. Contempo advances, *inter alia*, three grounds for invalidity: (i) the design is not ornamental because it is dictated solely by functional considerations, (ii) the design is not ornamental because it is hidden in normal use, and (iii) the invention is obvious in view of the prior art.[1] Contempo also claims that the patent is unenforceable because of fraud supposedly practiced upon the Patent Office and requests an award of attorneys' fees.

The battle between A & H and Contempo has raged unabated in this court for some two years, and extensive discovery has resulted. As trial approached, however, the parties (with the approval of the court), on August 10, 1983, entered into a stipulation waiving trial by jury, and providing for submission of the cause for decision by the court on the merits on cross-motions for summary judgment; the agreed facts contained in the Joint Memorandum filed by the parties on July 18, 1983 in response to the commands of the court's January 7, 1983 pre-trial order; and sundry ancillary documentary submissions (comprising, in the main, discovery materials). Since that time, the cross-motions have been filed and the selected documents submitted; in addition, the case has been amplitudinously briefed. Neither the plaintiff nor the defendants have requested oral argument, and the court cannot discern any benefit to be derived therefrom; oral argument is, therefore, deemed to have been forsworn. *Railroad Salvage of Conn., Inc. v. Railroad Salvage, Inc.*, 561 F.Supp. 1014, 1018 n. 8 (D.R.I.1983). *And see* Local Rule 12.-1(b). The cause is, therefore, ripe for decision.

Having scrutinized the evidence under the jeweler's glass of the applicable legal precedents, the court holds that the patent is invalid; but that no fraud has been contrived, and that Contempo is not entitled to a counsel fee award. This memorandum constitutes the court's findings of fact and conclusions of law in the premises, as required by Fed.R.Civ.P. 52(a).

## I.

Both A & H[2] and Contempo manufacture and sell jewelry display cards—cards designed to hold and exhibit jewelry. and which customarily are hung on standard retail display racks. All types of conventional display racks are constructed specifically to feature the front of the card, where the piece of jewelry is observable. While the backs of the cards may be visible when hung on certain kinds of racks, some racks completely conceal the rear of the cards. The card design which is covered by the patent in suit, the foam pouch pendant display card, is graphically illustrated below.

---

1. The defendants' answer contained a laundry list including virtually every basis on which patent invalidity could ever be premised. Contempo's briefs are, however, considerably more focused. The defenses initially raised but not thereafter briefed or argued are, of course, deemed to have been abandoned. *United States v. Kobrosky*, 711 F.2d 449, 454 (1st Cir.1983).

2. A & H is, in essence, a holding company. The jewelry cards are made by its manufacturing affiliate (AFCO), a Rhode Island corporation doing business as "A & H Manufacturing Company." The court refers to them collectively as "A & H." According to Feibelman, A & H is the world's largest manufacturer of jewelry display cards.

The card is made of flat plastic which is molded at the top into a backward fold to form a bracket (a) which fits over a bar for suspension on a retail display rack. Attached to the front of the card is a velour or velvet pad (b), against which rests the pendant or necklace jewel. The upper corners of the pad and the plastic beneath it are traversed by diagonal slits (c) that end in round holes (d) at the interior of the card. The chain attached to the bauble passes through the slots and holes to the rear of the card. On the reverse side of the card is a rectangular piece of soft foam, ultrasonically bonded to the card on three edges to form a pouch (e) which retains the excess necklace chain. The bonded margins have a crosshatched pattern (f).

Pendant display cards are old in the art. Except for the foam pouch, all of the features described above are hoary in the trade, and have long been common to pendant display cards generally. Additionally, the evidence contains descriptions of certain prior art cards that also feature some type of pouch on the rear to contain surplus chain: the paper envelope pouch card, the polybag pouch card, the acetate bubble pouch card, and the two-piece snap-together pouch card. Of these four, only the last was referred to in the application for the patent at issue. The plaintiff knew of the four types of prior art cards at the time the application was filed, but referred the examiner to none but the snap-together card. The plaintiff explains this omission by its asseveration that the designs of the earlier pouches are so unlike the design of the foam pouch that they are plainly inapposite.

The paper envelope and the polybag (a small bag made of plastic) are both flat integuments which are glued to the back of display cards. The acetate bubble has gone the way of the dinosaur. Production ceased about five years ago and no sample is available. It was a three-dimensional receptacle which also was pasted onto the back of a display card. The bubble had a small die-cut, covered opening at the top through which a chain could be inserted. The snap-together card, protected by United States Patent No. 4,175,660 (invented by Feibelman and assigned to 'A & H), features a relatively rigid plastic compartment which snaps onto the back of a specially constructed card.

All of the prior art pouches required considerable labor to assemble because they had to be glued on or snapped on. In contrast, the foam pouch card overcomes this sticky problem; it is manufactured in a single automatic process during which the foam pouch is ultrasonically bonded to the card. Further, the prior art pouches were made of relatively inflexible materials, but the foam pouch is extremely malleable.

The A & H foam pouch card has enjoyed substantial commercial success. Prior to the issuance of the design patent in suit, Contempo copied one of the plaintiff's foam pouch cards and offered it for sale. The card that Contempo copied was not marked "patent pending," nor did it contain a patent number. When the patent issued, Contempo voluntarily ceased marketing its version of the product and filled only previously-received orders for the foam pouch card. Within four weeks after the patent was granted, Contempo ceased all sales of the card. That moratorium has been maintained *pendente lite.*

## II.

■ The patentability of designs is governed by 35 U.S.C. § 171, which provides:

Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor,

subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

More than a century ago, the Supreme Court explained that it is the appearance of the article which is protected by and crucial to a design patent. *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 524–25, 20 L.Ed. 731 (1871). *Accord Schnadig Corp. v. Gaines Manufacturing Co.,* 494 F.2d 383, 389 (6th Cir.1974); *Rains v. Niaqua, Inc.,* 406 F.2d 275, 276 (2d Cir.), *cert. denied,* 395 U.S. 909, 89 S.Ct. 1751, 23 L.Ed.2d 222 (1969); *Robert W. Brown & Co. v. De Bell,* 243 F.2d 200, 202 (9th Cir.1957); *Contico International v. Rubbermaid Commercial Products,* 506 F.Supp. 1072, 1075 (E.D. Mo.), *aff'd,* 665 F.2d 820 (8th Cir.1981). To be patentable, a design must be primarily ornamental; designs dictated by functional considerations are not primarily ornamental and, therefore, are not patentable. *Barofsky v. General Electric Corp.,* 396 F.2d 340, 342 (9th Cir.1968), *cert. denied,* 393 U.S. 1031, 89 S.Ct. 644, 21 L.Ed.2d 575 (1969); *Methode Electronics, Inc. v. Elco Corp.,* 385 F.2d 138, 141 (3d Cir.1967); *Bentley v. Sunset House Distributing Corp.,* 359 F.2d 140, 145 (9th Cir.1966); *Day-Brite Lighting, Inc. v. Compco Corp.,* 311 F.2d 26, 28 (7th Cir.1962), *rev'd on other grounds,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); *Heritage Quilts, Inc. v. New Haven Comfort Products,* 466 F.Supp. 229, 231 (S.D.N.Y.1979); *Fendall Co. v. Welsh Manufacturing Co.,* 203 F.Supp. 45, 47 (D.R.I.1962); *Tupper Corp. v. Tilton & Cook Co.,* 113 F.Supp. 805, 806 (D.Mass.1953), *aff'd,* 209 F.2d 954 (1st Cir. 1954).

■ Feibelman's deposition testimony reveals that the prior art pendant display cards suffered from two particular functional problems. First, because the prior art cards required assembly, they were labor-intensive and costly to produce. And second, because the prior art containers were made of relatively inflexible materials, insertion of the chain into the pouch was difficult and breakage of the chain upon intromission was an ever-present threat. The soft foam pouch of the patented design eliminates this brace of problems in one fell swoop. The plaintiff protests that the prior art cards were ugly and that, except for the need to retain excess chain, the design of the instant patent was dictated by purely ornamental considerations. This argument, while made with considerable flash and glitter, is more zircon than precious stone. The court concludes that the resolution of pre-existing functional shortcomings effected by introduction of the patented design is more than an unlikely coincidence. Notwithstanding its belletristic aura, the new configuration is unmistakably a response to problems of usage. And, because the design is dictated by functional requirements, it is not patentable.

The Supreme Court's admonition that design patent protection hinges on appearance, *Gorham Co. v. White,* 81 U.S. (14 Wall.) at 524–25, 20 L.Ed. 731 also underlies the second ground for the invalidity of A & H's patent. "It has been held repeatedly that articles which are concealed or obscure in normal use are not proper subjects for design patents, since their appearance cannot be a matter of concern." *Application of Stevens,* 36 Cust. & Pat. App. 1017, 173 F.2d 1015, 1016 (1949). *Accord Transmatic, Inc. v. Gulton Industries,* 601 F.2d 904, 911 (6th Cir.1979). *See also Application of Zahn,* 617 F.2d 261, 269 (C.C.P.A.1980). While modesty is, in some contexts, among the most admirable of virtues, it is a fatal flaw in a design patent.

■ In normal use, the foam pouch card holds and displays a pendant or other variety of necklace and is suspended on a jewelry display rack. At best, the hind of the foam pouch card is only partially hidden on some merchandising racks. Even then, the intent of the fanfaronade is to draw the customer's eye to the jewelry on the front of the card; any glimpses of the dorsa of other cards are incidental. Further, A & H

concedes that certain types of display racks obscure totally the backs of the cards. In either case, the foam pouch is "more or less hidden from view" in ordinary use, a condition which renders an article an inconcinnous subject for a design patent. *In re Koehring,* 37 F.2d 421, 422–23 (C.C.P.A. 1930). *See also Application of Cornwall,* 43 Cust. & Pat.App. 824, 230 F.2d 457, 459 (1956). The foam pouch design is, therefore, not "ornamental," and not patentable under 35 U.S.C. § 171.

 Nor is this the end of the plaintiff's travail. Even a design patent which meets the ornamentality requirement of § 171 may still be invalid if it fails to conform to other criteria for patentability. Because § 171, quoted *ante,* explicitly incorporates the statutory provisions relating to utility patents, design patents must also measure up to the nonobviousness standard codified in 35 U.S.C. § 103. *In re Nalbandian,* 661 F.2d 1214, 1216 (C.C.P.A. 1981). Section 103 provides:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

"The entire concept of obviousness is, no doubt, 'an elusive one, especially when applied to elements of design.'" *Rains v. Niaqua, Inc.,* 406 F.2d at 278 (quoting *Hygienic Specialties Co. v. H.G. Salzman, Inc.,* 302 F.2d 614, 618 (2d Cir.1962)). And "the determination of patentability in design cases must finally rest on the subjective conclusion of each judge." *Application of Bartlett,* 49 Cust. & Pat.App. 969, 300 F.2d 942, 944 (1962).

The Supreme Court established the test for obviousness in *Graham v. John Deere Co.:*

> While the ultimate question of patent validity is one of law, the § 103 condition ... lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966) (citation omitted).

The prior art was set out in section I, *ante;* it comprises the four other types of pouch cards. The differences between those specimens and the foam pouch card are evident from the previous description. All the described pouches are symmetrically placed on and attached to the rear of display cards. Like the acetate bubble and snap-together pouch, the foam pouch has a three-dimensional appearance when viewed from the side. The texture of the foam pouch does impart a softer look to the disputed design, but this is due entirely to the material used.

 The § 103 reference to "a person having ordinary skill in the art" should be interpreted to mean a "designer of ordinary capability who designs articles of the type presented in the application." *See, e.g., Nalbandian,* 661 F.2d at 1216. Because the parties did not directly address the issue, however, the level of skill attributable to that ordinary designer is slightly more difficult to identify. But, after considering the relevant factors, including previous design efforts, problems encountered in the art, the pace of innovation in the field, the relative sophistication of the technology, and the educational level of active practitioners, *cf. Orthopedic Equipment Co. v. United States,* 702 F.2d 1005, 1011 (Fed.Cir.1983), the court concludes that an ordinary designer would be someone familiar with the prior art and having several years of experience designing pendant display cards. Based upon the preceding analysis, the court finds that there is "such

a substantial similarity in overall appearance between the patented design and the prior art relied upon ... as to make that design obvious within 35 U.S.C. § 103." *Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.,* 444 F.2d 295, 299 (9th Cir. 1970). In light of the foregoing, the court holds that the overall appearance of the foam pouch card is substantially similar to that of the antecedent exemplars, that the design would have been apparent to an ordinary craftsman, *cf. Mayview Corp. v. Rodstein,* 620 F.2d 1347, 1355 (9th Cir. 1980), and that the plaintiff's patent is therefore invalid.

■ This conclusion is fortified by the fact that, according to Feibelman's deposition testimony, the foam pouch design was invented and manufactured within one month of the request from a customer of A & H that the company develop a new pendant display card. Such celerity, in and of itself, is some evidence of the obvious nature of the innovation. *Cf. Scott Paper Co. v. Fort Howard Paper Co.,* 432 F.2d 1198, 1204 (7th Cir.1970), *cert. denied,* 401 U.S. 913, 91 S.Ct. 882, 27 L.Ed.2d 812 (1971).

■ Nor can the triumphant procession of the foam pouch card throughout the jewelry industry save the patent from invalidity in the circumstances of this case. It cannot be gainsaid that "[c]ommercial success is of great importance in determining the validity of a design patent." *Robert W. Brown & Co.,* 243 F.2d at 202. Such preeminence can be a very relevant, albeit secondary, consideration, particularly on the question of obviousness *vel non. Graham v. John Deere Co.,* 383 U.S. at 17–18, 86 S.Ct. at 693–94. But, the sweet smell of success, without more, is an uncertain indicator; to be determinative, the aroma must waft proximately from the design. In the case at bar, it has not been demonstrated that the card's warm commercial welcome was due to design rather than to utility; and the facts at hand reek strongly of a contrary conclusion. The product's acceptance and acclaim in the marketplace cannot, therefore, impart patentability to

the design. *Cf. Nalbandian,* 661 F.2d at 1218; *Heritage Quilts, Inc.,* 466 F.Supp. at 231; *Fendall Co.,* 203 F.Supp. at 47.

■ The court is not unmindful of the statutory presumption of validity which attaches upon the granting of letters patent. 35 U.S.C. § 282. The law places "[t]he burden of establishing invalidity of a patent ... on the party asserting such invalidity." *Id.* Yet, it is equally true that the presumption "has no independent evidentiary value;" and further, that while "[r]easonable doubt on the issue of validity must be resolved in favor of the patent holder," nevertheless "in the usual case a preponderance of evidence determines the issue." *Rains v. Niaqua,* 406 F.2d at 278. Even if the standard was greater than a fair preponderance, *cf. Wolens v. F.W. Woolworth Co.,* 703 F.2d 983, 992–93 (7th Cir.1983), the evidence here is sufficiently compelling that the invalidation of the patent must necessarily follow. Simply put, the plaintiff's gem does not sparkle with the requisite lustre. The presumption of legitimacy has been overcome, and the burden of showing the patent to be nugatory has been shouldered.

### III.

■ While the foregoing findings and conclusions are dispositive of the merits, the defendants' claim of skulduggery should nonetheless be addressed (especially in view of Contempo's quest for attorneys' fees). From the outset of this litigation, Contempo has argued passionately that A & H, by deliberately withholding pertinent prior art from the examiner, committed fraud on the Patent Office. The snap-together pouch card—the only prior art card to which the examiner was referred by the applicant—certainly seems, as among the earlier examples of the genre, to be the least similar in appearance to the foam pouch card. A & H maintains, however, that it is the most analogous design and that the other cards are visually quite disparate.

The law on patent fraud is relatively certain:

> Establishing that a patent was procured by fraud or with such egregious conduct as to render it unenforceable requires clear, unequivocal, and convincing evidence of an intentional misrepresentation or withholding of a material fact from the [Patent Office]. Although inequitable conduct requires less stringent proofs as to both materiality and intent than common law fraud, mere evidence of simple negligence, oversight, or an erroneous judgment made in good faith not to disclose prior art is not sufficient to render a patent unenforceable.

*Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383 (Fed.Cir.1983) (citations omitted). *Accord Digital Equipment Corp. v. Diamond*, 653 F.2d 701, 715 (1st Cir.1981); *Schnadig Corp.*, 494 F.2d at 392; *Scott Paper Co.*, 432 F.2d at 1204. The evidence in the instant case indicates that the course of prudence might well have been to advert to some or all of the omitted prior art in the patent application. But, hindsight is often twenty-twenty. And, there is nothing in the record seriously to suggest that the decision to do otherwise was anything more or less than a routine judgment call, undertaken without evil intent or improper motive. Given the state of the record, Contempo has fallen far short of sustaining its burden of proving the fraud which it so vociferously alleges.

### IV.

Finally, Contempo claims that it is entitled to counsel fees under 35 U.S.C. § 285, which provides in its entirety:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The mere fact that the court has found neither fraud nor inequitable conduct does not automatically render the case ultracrepidarian for purposes of § 285, for the court in its discretion may find the case "exceptional" for some other reason. *Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d at 1384. *But see Scott Paper Co.*, 432 F.2d at 1205 ("attorneys fees should not be awarded under 35 U.S.C. § 285 except to prevent gross injustice and where fraud and wrong-doing are clearly proved"); *Maurice A. Garbell, Inc. v. Boeing Co.*, 546 F.2d 297, 300 (9th Cir.1976), *cert. denied*, 431 U.S. 955, 97 S.Ct. 2677, 53 L.Ed.2d 272 (1977) ("court's discretion in awarding attorney's fees in patent cases may be invoked only upon a finding of bad faith or inequitable conduct on the part of the losing party which would make it grossly unjust for the prevailing party to be left with the burden of his litigation expenses"). *Accord Mayview Corp. v. Rodstein*, 620 F.2d at 1357. As patent cases go, the controversy *sub judice* can only be regarded as commonplace. The patent was obtained by regular means; the plaintiff has not, for aught that appears, been guilty of inequitable conduct; and its attempts to enforce its putative rights under the patent as against an admittedly infringing competitor have not transgressed the bounds of propriety. There is, in short, nothing remarkable about the case—except, perhaps, the defendant's professed belief that it is entitled to a fee-shifting order. Contempo's claim for redress pursuant to 35 U.S.C. § 285 merits summary rejection.

### V.

For the reasons set forth herein, the court holds that United States Design Patent D–261,729 is invalid; but that A & H did not perpetrate a fraud upon the Patent Office and is not liable for counsel fees. In consequence, the plaintiff's complaint is dismissed with prejudice; and the defendants' counter-claim is allowed, and a declaration of the invalidity of the patent is noted. Judgment for the defendants accordingly, and for costs.

*It is so ordered.*