42 C.C.P.A.(Patents)
**In the Matter of the Application of
Jacques ROUSSO.
Patent Appeal No. 6115.**

United States Court of Customs and
Patent Appeals.
May 25, 1955.

Joshua R. H. Potts, Chicago, Ill. (Anthony J. Turchetti, Philadelphia, Pa., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

GARRETT, Chief Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming the rejection by the Primary Examiner of appellant's application for design patent, serial No. 3,849, filed July 12, 1949, for a "Towel Cabinet."

The rejected claim is in the conventional design form, reading: "The ornamental design for a towel cabinet, as illustrated." Although there is only one illustration in the record before this court, there are several references to a "Figure 2." In the brief in behalf of the Commissioner of Patents, we are told—

"Although the record includes only a single drawing denoted Figure 1, the Examiner's Statement * * * refers to a Figure 2. Moreover, the Board decision * * * and the appellant's brief * * * describe certain braces on the rear of the cabinet and an interior shelf, which do not appear in Figure 1 as shown in the record. Inspection of the file reveals that an additional sheet of drawing bearing Figure 2, a perspective view of the cabinet, was prepared by the Patent Office at the applicant's request and with the approval of the examiner. It was mailed to the applicant's attorney June 27, 1952, for signature but Patent Office records do not show that it was ever returned. Thus, it was never entered officially in the case and could not be included in the appeal record."

Neither applicant nor the Commissioner has complained of the absence of Figure 2, however, and we will therefore consider only Figure 1. It does not appear that Figure 2 in fact presents matter which differentiates it from Figure 1 in any patentable sense.

Figure 1 shows a cabinet which, we learn from the briefs, is designed to hold clean, individual fabric towels for use in public washrooms. When in use, clean towels are threaded on a wire rod, and placed in the top half of the cabinet. A person wishing to dry his hands would draw a towel from the top of the cabinet, dry his hands, and then release the towel, which would follow the wire rod into a storage compartment in the lower half of the cabinet.

In appearance appellant's towel cabinet is a rectangular box, of the same

general configuration as an orange crate standing on end. The top of the cabinet, through which the clean towels are drawn, is open. The lower 60% of the forward side of the cabinet is open, and the upper 40% (which adjoins the clean towels) is closed. A wire rod leads from inside the open top, down the outside of the short front panel, and into the open lower half of the forward side. The other sides of the cabinet which are visible are apparently fully paneled, though there is a suggestion in the briefs that Figure 2 had showed that the back of the cabinet was open. Certain other bars and rods appear in Figure 1, but they seem to be related to the mechanical features of the cabinet, and it is not urged that these features support design invention.

The following references were cited below: Hamner 2,077,753 Apr. 20, 1937; Forman 2,244,833 June 10, 1941. Both of the reference patents are mechanical patents for towel cabinets, as distinguished from patents for design, and are relied upon for their illustrations.

The Hamner patent shows a towel cabinet which also is of a rectangular box-like shape. It, too, shows a wire rod upon which fabric towels are threaded, with a shelf in the upper half of the box upon which clean towels are placed, with the lower half adapted to receive the dirty towels. The only significant structural difference between the Hamner cabinet, and that of appellant's, is that in the Hamner cabinet, the top of the cabinet is closed, and the clean towels are withdrawn from the open side, while in appellant's cabinet, the side adjoining the clean towels is closed, and the clean towels are withdrawn through the open top.

The Forman patent shows a towel cabinet which is also a vertically elongated box with a horizontal cross section. In one form of the Forman patent, three sides and the top and bottom of the box are closed. A towel "carrier unit" is adapted to be inserted into the open side of the box, and fastened in the upper half of the box. This carrier unit is designed to facilitate the loading of the cabinet with towels. There is a panel adjoining the clean towels, so that when the carrier is placed in the cabinet for use, the cabinet has a paneled appearance, from a few inches below the top of the cabinet, to the bottom of the towel carrier unit. Forman also shows the wire rod upon which the towels are threaded. The only significant difference between the Forman cabinet and appellant's cabinet is that in Forman the top is closed, and the clean towels are withdrawn from a gap between the top and the front panel on the carrier unit, while in appellant's cabinet the paneling goes all the way to the top of the cabinet, and the towels are withdrawn from the open top.

As should be clear from the foregoing description, appellant's cabinet differs from the prior art, only in having an open top, rather than an open or partially open side. We cannot see how in this case that difference should be held sufficient to make appellant's design patentable. Appellant has cited cases holding that a design is to be judged according to its general appearance as it is presented to the layman. We cannot see how those cases are of any benefit to appellant in this case. It seems to us that the claimed design would present the same general appearance as either of the cabinets of the references.

■ Appellant seems to recognize that "the differences in appellant's design over the prior art may be slight in fact," but he still urges that his design is patentable. The main error of appellant in this case is the belief that there is a lower standard of invention required for design patents than for other patents. Appellant quotes as follows from Dominick & Haff v. R. Wallace & Sons Mfg. Co., 2 Cir., 1913, 209 F. 223, 224:

"The policy which protects a design is akin to that which protects the works of an artist, a sculptor or a photographer by copyright. *It requires but little invention,* in the sense above referred to, to paint a pleasing picture, and yet the pic-

ture is protected, because it exhibits the personal characteristics of the artist, and because it is his. So *with a design.* To produce a *graceful* pattern for the handle of a spoon or fork requires an exercise by the inventor of 'The intuitive faculty of mind,' *but in a different sense from that exercised by the inventor of such epoch-making inventions as the safety lamp, the locomotive and the telephone.* A design patent necessarily must relate to subject matter *comparatively trivial* and *the courts have looked with greater leniency upon design patents than patents for other inventions.* The object of the law is to encourage those who have the industry and genius to originate objects which give pleasure through the sense of sight." [Emphasis supplied by appellant.]

We do not regard the foregoing as being a correct statement of the law. Appellant has apparently overlooked the case of Nat Lewis Purses, Inc. v. Carole Bags, Inc., 83 F.2d 475, 476, wherein the Court of Appeals for the Second Circuit, Judges L. Hand, Swan, and Chase sitting, made the following statement:

"* * * If the test of invention is the same for design, as for mechanical, patents, the patent in suit cannot survive.

"There has undoubtedly been some vacillation about that question in the books. Some opinions appear to imply that if a design be new and pleasing enough to catch the trade, nothing more is required. Wood & Sons v. Abelson's, Inc., 3 Cir., 74 F.2d 895, may possibly be so read, and something very close to it appeared in Graff, Washbourne & Dunn v. Webster, 2 Cir., 195 F. 522; Dominick & Haff v. Wallace & Sons Mfg. Co., 2 Cir., 209 F. 223; and Mygatt v. Schaffer, 2 Cir., 218 F. 827. When Steffens v. Steiner, 2

Cir., 232 F. 862, was in the District Court, the judge sustained some patents for cigar bands, which were new but to whose production no greater talents were necessary than those of journeymen designers. This he did, because he read the three decisions we have just cited as establishing a different standard for design from that for mechanical patents. We said no; we held that a design patent must be the product of 'invention,' by which we meant the same exceptional talent that is required for a mechanical patent. Since then we have several times expressly reiterated the doctrine. * * * It is doubtful whether the opinions which are supposed to set up the other standard really meant to do so; the language was discursive rather than constitutive, and can be naturally enough limited to the concrete situations before the courts, upon which it was appropriate enough comment; but if this be not the explanation, we cannot agree. * * *" [Emphasis supplied.]

This court consistently has followed the rule of the Nat Lewis case, supra. See In re Bigelow, 194 F.2d 550, 39 C.C.P.A., Patents, 835; In re Warren, 194 F.2d 715, 39 C.C.P.A., Patents, 873.

If any doubt at all remained upon the question it seems to us to have been dispelled by 35 U.S.C. 1952 ed. § 171, which states, "The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided." No exception was made in the 1952 code for designs from the requirements for invention applicable to other patents, and so far as we are advised, no such exception has ever been made in any statute.

It is clear that the decision of the Board of Appeals should be affirmed, and it is so ordered.

Affirmed.