**Mark R. HOOP and Lisa J. Hoop, Plaintiffs–Appellants,**

**v.**

**Jeffrey W. HOOP, Stephen E. Hoop, and Hoopsters Accessories, Inc., Defendants–Appellees.**

**No. 01–1288.**

United States Court of Appeals, Federal Circuit.

Jan. 30, 2002.

Alfred J. Mangels, of Cincinnati, OH, argued for plaintiffs-appellants.

G. Steven Fender, Litchford & Christopher, of Orlando, Florida, argued for defendants-appellees. With him on the brief was Hal K. Litchford.

Before MAYER, Chief Judge, LOURIE and DYK, Circuit Judges.

MAYER, Chief Judge.

Mark R. and Lisa J. Hoop appeal the preliminary injunction entered by the United States District Court for the Southern District of Ohio enjoining them from acts which would constitute infringement of Jeffrey W. and Stephen E. Hoop's U.S. Design Patent No. 428,831. *Hoop v. Hoop*, No. C–1–00–869 (S.D.Ohio Feb. 28, 2001). Because the district court did not abuse its discretion in determining that Jeffrey and Stephen Hoop would likely succeed in sustaining the validity of their patent, we affirm.

*Background*

In 1998, Jeffrey and Stephen Hoop ("Hoop brothers") conceived of a pair of eagle-shaped motorcycle fairing guards. Fairings are clear glass or plastic structures mounted above motorcycle handlebars to reduce wind drag. The eagle-shaped guards attach to the fairings to prevent damage to the fairings if the motorcycle tips over. The Hoop brothers created sketches of the eagle design. (See figures 1 and 2, below.) Lacking drawing and casting expertise, they hired Lisa Hoop, a graphic designer, and Mark Hoop (their cousin and Lisa's ex-husband), a metal die caster, ("Mark and Lisa") to create detailed drawings and three-dimensional models for a patent application. Mark and Lisa signed nondisclosure agreements and prepared sketches and molds. (See figure 3, below.)

Figure 1          Figure 2          Figure 3

In November of 1999, the Hoop brothers applied for a design patent. After discussions over a manufacturing agreement between the parties failed, in March of 2000, Mark and Lisa also applied for a design patent, using the same drawings they had prepared for the Hoop brothers. The Hoop brothers' patent issued on August 1, 2000, as U.S. Design Patent No. 428,831, and Mark and Lisa's identical patent issued on September 26, 2000, as U.S. Design Patent No. 431,211. In October of 2000, the Hoop brothers asked to have Mark and Lisa's patent reexamined. During reexamination, the examiner rejected Mark and Lisa's patent as anticipated by the Hoop brothers' patent. Mark and Lisa filed suit in the district court to invalidate the Hoop brothers' patent, and asserted infringement, unfair competition, and tortious interference with prospective economic advantage.

The Hoop brothers counterclaimed and moved to enjoin Mark and Lisa from making, using, selling, or offering for sale, any motorcycle fairing guard containing the design in their patent. The district court found that the Hoop brothers were the true inventors, and therefore held that they would likely succeed in sustaining the validity of their patent, and that Mark and Lisa were likely infringing. The court also held that the Hoop brothers had shown they would suffer irreparable injury absent an injunction. And it reasoned that although a preliminary injunction may cause harm to Mark and Lisa, the public interest favored protection of the patent. The court granted the Hoop brothers' motion for a preliminary injunction. Mark and Lisa appeal.

### Discussion

■■ Under the patent laws, the district court has discretion to grant a preliminary injunction it deems reasonable. 35 U.S.C. § 283 (1994). We will affirm unless we find it to be an abuse of discretion, based upon an error of law, or a serious misjudgment of the evidence. *Nutrition 21 v. United States*, 930 F.2d 867, 869, 18 USPQ2d 1347, 1349 (Fed.Cir.1991).

■ As the moving party, the Hoop brothers bore the burden of establishing their right to a preliminary injunction based upon four factors: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction were not granted; (3) the balance of the hardships[;] and (4) the impact of the injunction on the public interest." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363, 57 USPQ2d 1647, 1649 (Fed.Cir.2001) (citing *Polymer Techs. v. Bridwell*, 103 F.3d 970, 973, 41 USPQ2d 1185, 1188 (Fed.Cir.1996)). Mark and Lisa challenge only the likelihood of success prong.

■ The question here is whether the refinements made by Mark and Lisa rise to the level of inventorship, so as to displace the Hoop brothers as patentees. Mark and Lisa argue that they are the true inventors because they perfected the original design by adding detail to the design sketches and creating the three-dimensional molds. Accordingly, they assert that the trial court erred in finding the Hoop brothers likely to succeed in sustaining the validity of their patent. We do not agree.

■ Design patents may be obtained by "[w]hoever invents any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171 (1994). We apply the same standard of inventorship to design patents that we require for utility patents. *In re Rousso*, 42 C.C.P.A. 910, 222 F.2d 729, 731, 106 USPQ 99, 101 (CCPA 1955) (rejecting the assertion that a lesser standard of invention applies to design patents than to mechanical patents). An inventor under the patent laws is the "person or persons who conceived the patented invention." *C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1352, 48 USPQ2d 1225, 1232 (Fed.Cir.1998). An inventor may then "use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460, 45 USPQ2d 1545, 1548 (Fed.Cir.1998) (citing *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 624, 225 USPQ 634, 641 (Fed.Cir.1985)). The facts are undisputed that the Hoop brothers were the first to conceive of the eagle-shaped fairing guards, and brought the concept to Mark and Lisa for assistance. Thus in the absence of the inventive quality required for a patentable design on the part of Mark and Lisa, the Hoop brothers remain the true inventors.

■ One may not qualify as a joint inventor, or as here, a new inventor, by "merely assisting the actual inventor *after conception* of the claimed invention." *Ethicon*, 135 F.3d at 1460, 45 USPQ2d at 1548 (emphasis added). Minor differences between the prior art and the new claim will not suffice. *In re Zemon*, 40 C.C.P.A. 1051, 205 F.2d 317, 320, 98 USPQ 223, 224 (CCPA 1953). The differences here must be substantial and not just superficial; the new design must contain an inventive concept. *Id.* The ultimate test for design-patent inventorship, like the test for anticipation and infringement, is whether the second asserted invention is "substantially similar" to the first. *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990, 27 USPQ2d 1516, 1520 (Fed.Cir.1993). Substantial similarity is a question of fact. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124, 25 USPQ2d 1913, 1918 (Fed.Cir.1993).

The district court found that Mark and Lisa's drawing lacked an "independent," which we read as inventive, concept. The court summarized its improvements over the Hoop brothers' sketch as increased

detailed feathering and an overall less triangular shape. Noting the strong similarity between the drawings, the court reasoned that Mark and Lisa merely refined and perfected the Hoop brothers' concept. Therefore, the two designs were not separate inventions. Mark and Lisa did remove the suggestion of the eagle's tail, see figure 2, but the two eagles have the same proportions, body size, orientation, three rows of feathers, head and beak shape, and eye placement. We agree that the trial court could permissibly conclude at the preliminary injunction stage that the second design was likely to be found to be merely a more refined version of the first. However, final resolution of this factual question must await a trial on the merits. The court's determination that the Hoop brothers are likely to be found to be the true inventors and that they are likely to succeed in sustaining the validity of their patent is sustained.

### Conclusion

Accordingly, the order of the United States District Court for the Southern District of Ohio is affirmed.

*AFFIRMED.*

LOURIE, Circuit Judge, dissenting.

I respectfully dissent. I would reverse the district court's grant of a preliminary injunction on the ground that the district court applied the wrong legal standard in determining inventorship of a design patent and that the court's determination that the Hoop brothers had proved a likelihood of success on the question of validity was therefore flawed. I would remand for a redetermination of the likelihood of success under the proper standard.

While brought by Mark and Lisa as a § 291 action seeking a determination of priority between two issued patents, the Hoop brothers counterclaimed in this case, asserted infringement by Mark and Lisa, and requested the grant of an injunction. The district court determined that the Hoop brothers were the inventors of the patented fairing design and that Mark and Lisa were infringing the brothers' patent. The court relied on its conclusion that the original drawings made by the brothers and that made by Mark and Lisa do not "evidence an independent concept," and that the brothers hired Mark and Lisa to refine what was their drawing. The majority has affirmed that determination. I disagree.

The undisputed facts are that the Hoop brothers made a sketch of an eagle fairing design and asked Mark and Lisa to make three-dimensional drawings and models of that design. In doing so, Mark and Lisa made a different design, one that differed from the original design of the brothers in several respects. Both parties then filed patent applications and obtained the grant of patents on the design of Mark and Lisa. The majority opinion does not note that the design that accompanied the brothers' patent application and constituted its claim, which is illustrated in Figure 3 of the majority opinion, was Mark and Lisa's design.

When one party conceives an invention and then asks a second party to reduce it to practice, the second party is not normally an inventor, or co-inventor, unless the second party has made significant changes in the original proposal necessary to carry out the conception. *See Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1460, 45 USPQ2d 1545, 1548 (Fed.Cir.1998) ("[D]epending on the scope of a patent's claim, one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor."). The second party's work may constitute a separate invention if it is different in respects that render it nonobvious and the

first party did not conceive of those aspects. If the parties worked together, they may be co-inventors, *id.*, but that does not appear to be the case here. What does appear to be the case here is that the second party may have made an invention that is distinct from, and possibly separately patentable from, that of the first party's original design.

Design patents do not claim concepts. They claim specific designs set forth in their claims, which invariably refer to the appearance of what is illustrated in the patent's drawings. 37 C.F.R. § 1.153(a) (2001). Contrary to the conclusion of the district court, as the invention is not the concept of an eagle design, but only the specific claimed representation of that eagle, the "concept" of the design is not what one must look at in determining whether the inventions are one and the same or separate. *See In re Harvey*, 12 F.3d 1061, 1064, 29 USPQ2d 1206, 1208 (reversing a finding of obviousness under 35 U.S.C. § 103 because it "should have focused on actual appearances, rather than 'design concepts' "). One must look at the differences between the overall appearance of the eagles to determine inventorship of the specific design. *See KeyStone Retaining Wall Sys. v. Westrock, Inc.*, 997 F.2d 1444, 1450, 27 USPQ2d 1297, 1302 (Fed.Cir. 1993) ("[I]t is the appearance of a design as a whole which is controlling in determining questions of patentability and infringement." (quoting *In re Rubinfield*, 47 C.C.P.A. 701, 270 F.2d 391, 395, 123 USPQ 210, 214 (CCPA 1959))). When a design is changed, the result may be a new design. *See In re Mann*, 861 F.2d 1581, 1582, 8 USPQ2d 2030, 2031 (Fed.Cir.1988) ("[I]f ... the design is changed, the result is a new and different design; the original design remains just what it was. Design patents have almost no scope.").

It is undisputed that both patents claim the same design, a design consisting of the specific appearance of the eagle shown in the patents, which is different from that in the sketch made by the Hoop brothers and identical to that made by Mark and Lisa, *i.e.*, Figure 3—not Figures 1 and 2. Quite possibly, one could reasonably conclude that the changes are significant enough to constitute a new design. The brothers' design has little detail in the eyes and wings, has a fairly straight beak, and has humps in the wings near the head. In contrast, the patented design of Mark and Lisa has substantial eye and wing detail, a curved beak, and nearly straight wings adjacent the head. Without recognizing the specifics of each design, one cannot evaluate the identity or separate patentability of the designs. *See In re Laverne*, 356 F.2d 1003, 1006–07, 148 USPQ2d 674, 677 (CCPA 1966) ("[W]e point out a number of differences ... the cumulative effect of which is unquestionably to create a different appearance.").

The principal question in determining the validity of the Hoop brothers' patent is whether the design claimed in that patent, which is the design Mark and Lisa made and claimed, is the same as or patentably indistinct from the sketch the brothers made and gave to Mark and Lisa, *i.e.*, whether it is the brothers' invention. Contrary to what seemed to impress the district court, it does not matter how much or how little experience the respective parties had in the field of motorcycle fairings. Nor does it matter that the brothers may have hired Mark and Lisa to make a design, or whether, through contract or operation of law, the brothers were entitled to ownership of any invention Mark and Lisa may have made. *See Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248, 26 USPQ2d 1572, 1582 (Fed.Cir.1993) ("It is elementary that inventorship and ownership are separate issues."). The issue here is inventorship, not ownership. What mat-

ters in determining whether the brothers are the inventors of the claimed design is whether, from the standpoint of an ordinary designer, the claimed design is the same as or different and patentably distinct from the brothers' original design. *See In re Nalbandian,* 661 F.2d 1214, 1215, 211 USPQ 782, 784 (Fed.Cir.1981) (adopting an "ordinary designer" standard for patentability of designs, as opposed to an "ordinary observer" test for infringement of design patents).

Because we are not designers of ordinary skill, we cannot make the conclusive factual evaluations necessary to determine whether the original brothers' design and Mark and Lisa's design are patentably distinct. I would therefore reverse the grant of the injunction and remand this case for the trial court to focus on the appearance of the respective designs and decide whether they are sufficiently different in a nonobviousness sense that it can be concluded that the brothers are not the inventors of the design claimed in their patent. If so, then they cannot show a likelihood of success in sustaining the validity of their patent under 35 U.S.C. § 102(f) so as to justify the grant of the preliminary injunction.