NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1526,-1537

SUNBEAM PRODUCTS, INC.,

Plaintiff-Appellant,

v.

WING SHING PRODUCTS (BVI) LTD.,

Defendant-Cross Appellant.

_____

DECIDED: August 24, 2005

_____

Before RADER, BRYSON, and LINN, Circuit Judges.

BRYSON, Circuit Judge.

Appellant Sunbeam Products, Inc., appeals from a decision of the United States District Court for the Southern District of New York, 311 B.R. 378, affirming in part and reversing in part a decision of the United States Bankruptcy Court for the Southern District of New York, 293 B.R. 586. Appellee Wing Shing Products (BVI) Ltd. cross-appeals.[1] We affirm.

---

[1] The appellee is one of a family of companies under common ownership and control. We refer to them collectively and individually as "Wing Shing."

In June 1991, John Sham, the president of Wing Shing, approached Jerry Blackwell, then a vice-president of Sunbeam's predecessor, a company known as Mr. Coffee. Mr. Sham offered to manufacture coffeemakers for Mr. Coffee, and he provided Mr. Blackwell with sketches of a design for the proposed coffeemaker. In response to questions from Mr. Blackwell, Mr. Sham provided a photograph of a wooden model of the coffeemaker. Between August 1991 and early 1992, employees of Mr. Coffee had a series of communications with representatives of Wing Shing regarding the coffeemaker design. In the course of those communications, Mr. Coffee employees asked that the design be changed by (1) eliminating grooves on the brew basket; (2) eliminating ridges on the reservoir cover; (3) moving the power switch from the base to the left column; (4) opening the brew basket from the left to right; (5) moving the water-level gauge from the right column to the left column; (6) inserting a metal plate on the bottom of the base; and (7) adding a shroud around the power switch. Wing Shing incorporated those changes into the design, which became known as the "AD10" model design.

On June 22, 1992, Mr. Coffee entered into an agreement with Wing Shing to purchase AD10 model coffeemakers from Wing Shing. The agreement contained several clauses pertinent to this case. It provided that: (1) the agreement was to be effective between January 7, 1992, and December 31, 1994; (2) "[a]ny and all existing patent rights for the units or any of its component parts shall be the sole and exclusive property and/or responsibility of Mr. Coffee"; and (3) the parties would negotiate patent rights before applying for a patent on any jointly developed patentable items.

After the execution of the agreement, Wing Shing began to supply coffeemakers to Mr. Coffee. Unbeknownst to Mr. Coffee, on July 13, 1992, Mr. Sham filed a design patent application for the design of the AD10 coffeemaker, listing himself as the sole inventor. That patent issued on July 12, 1994, as U.S. Design Patent No. 348,585 ("the '585 patent"). Wing Shing did not mark the AD10 coffeemakers as being covered by a patent after the '585 patent issued, however.

In November 1994, Mr. Coffee informed Wing Shing that Simatelex Manufactory Co., Ltd., was also producing the AD10 coffeemaker for Mr. Coffee. In March 1995, Wing Shing sent a telefax message to Mr. Coffee, stating that it had no objection to Mr. Coffee transferring the AD10 tooling to Simatelex. In that same telefax, Wing Shing informed Mr. Coffee that it had a design patent on the AD10 and therefore that it was entitled to sell the product to others. Although Wing Shing stated that the patent might result in business conflicts with Mr. Coffee, it never explicitly stated that Mr. Coffee was infringing the '585 patent. Wing Shing later conceded in the course of litigation that the March 1995 telefax did not constitute notice of infringement of the design patent.

By 2000, Sunbeam had acquired Mr. Coffee and had dramatically reduced the volume of AD10 coffeemakers it purchased from Wing Shing. Wing Shing then filed a patent infringement claim against Simatelex. Although Sunbeam was in bankruptcy, Wing Shing filed a motion for relief from the automatic stay in the Sunbeam bankruptcy proceedings. In response, Sunbeam sought enforcement of the automatic stay and commenced an adversary proceeding against Wing Shing in the bankruptcy court. In that proceeding, Sunbeam contended that Sunbeam was the exclusive owner of the '585 patent, had an indefinite exclusive license to market and sell the AD10

coffeemakers in certain markets, and had the right to choose any manufacturer to supply the AD10 coffeemaker. The bankruptcy court denied Wing Shing's motion to lift the automatic stay and enjoined Wing Shing from pursuing the district court patent infringement claim against Simatelex. In the adversary proceeding, Wing Shing filed an answer to Sunbeam's claims and counterclaimed, asking the bankruptcy court to enter a judgment enjoining Sunbeam from infringing the '585 patent and awarding Wing Shing damages for past infringement. In a joint pretrial order, the parties stipulated to the issues to be tried in that proceeding, which included the issue of joint inventorship.

The bankruptcy court tried the case, including the issues to which the parties stipulated in the pretrial order. At the conclusion of the trial, the court decided, <u>inter alia</u>, that (1) Sunbeam was not a joint inventor of the '585 patent; (2) Wing Shing was not barred by the doctrine of equitable estoppel from pursuing its infringement claim; (3) Wing Shing did not breach the agreement to negotiate patent rights, but even if it did, Sunbeam was barred by the statute of limitations from pursuing that claim; (4) Wing Shing was barred by the doctrine of laches from claiming damages for pre-suit infringement; (5) Wing Shing did not give Sunbeam notice of infringement prior to filing suit and for that reason as well was barred from claiming damages for pre-suit infringement; and (6) Sunbeam was entitled to deduct certain expenses of its Mr. Coffee line of products in calculating its profits on the products that incorporated the infringing design.

Sunbeam appealed to the district court from the first three rulings, and Wing Shing cross-appealed from the other three. The district court affirmed the bankruptcy court on all but two of the issues. The district court did not reach the laches issue, and

it disagreed with the bankruptcy court as to the breach of contract issue, holding that Wing Shing had breached the agreement requiring it to negotiate patent rights on jointly developed patentable items. The court concluded, however, that even though Wing Shing had breached the agreement, Sunbeam's contract-based claim was barred by the applicable statute of limitations.

II

We first address whether we have jurisdiction over this appeal. Wing Shing argues that we do not have jurisdiction because Sunbeam did not assert a joint inventorship claim or a claim requiring resolution of a substantial question of patent law. Sunbeam responds that jurisdiction in this court is proper because its complaint sought a declaration from the court that it owned the '585 patent or had an exclusive license based on the "course of conduct" of the parties. Sunbeam alleged in its complaint that the design in Wing Shing's design patent "is the same as that contained in the Mr. Coffee specifications." Based on that allegation, it argues that the "course of conduct" allegation incorporated a joint inventorship claim into the complaint. In the alternative, Sunbeam maintains that the pretrial order, which clearly contemplated that the court would resolve the joint inventorship question, had the effect of amending its complaint to add a claim arising under the patent laws. Wing Shing counters that the pretrial order did not in fact amend the complaint to include the issue of joint inventorship.

This court has jurisdiction under 28 U.S.C. § 1295 when a district court had subject matter jurisdiction under 28 U.S.C. § 1338(a). Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 829 (2002). Section 1338(a) provides subject-matter jurisdiction if the complaint alleges a patent law claim or a claim that depends on

the resolution of a substantial question of patent law. Id. at 830; see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (1988). We agree with Wing Shing that Sunbeam's complaint by itself does not allege a patent law claim or a claim that depends on the resolution of a substantial question of patent law. The complaint does not even mention joint inventorship, but instead requests relief based on a contract claim. The pretrial order, however, clearly identified the question whether Mr. Coffee employees were joint inventors of the '585 patent as an issue to be tried by the court. Moreover, the pretrial order stated that "the pleadings shall be deemed amended" to the extent necessary to allow Wing Shing to present its evidence at trial first. Thus, the order, which contemplated that joint inventorship was one of the issues in dispute, effectively amended Sunbeam's complaint to the extent necessary to allow orderly presentation of the stipulated issues.

Under these circumstances, it is fair to interpret the pretrial order as constructively amending the complaint to add the claim of joint inventorship. We have held that a district court "effected a constructive amendment of the complaint" when neither party objected to the district court adjudicating a joint inventorship claim that was not effectively pleaded in the plaintiff's complaint. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1357 (Fed. Cir. 2004). We have also held that "[f]or the purpose of determining Federal Circuit jurisdiction, we do not differentiate between actual and constructive amendments [to the complaint]." Chamberlain Group, Inc. v. Skylink Tech., Inc., 381 F.3d 1178, 1189 (Fed. Cir. 2004). Because we interpret the complaint, as amended by the pretrial order, to raise the patent issue of joint inventorship, we hold that we have jurisdiction to decide this appeal.

04-1526,-1537                                    6

With respect to the issue of joint inventorship, Sunbeam argues that because Mr. Coffee's employees suggested changes in the Wing Shing coffeemaker, they are joint inventors of the '585 patent as a matter of law. To support its argument, Sunbeam relies on Pannu v. Iolab Corp., 155 F.3d 1344 (Fed. Cir. 1998), in which we stated that "[b]ecause it is undisputed that the invention was conceived while Link and Pannu were engaged in a collaborative enterprise and it is furthermore undisputed that Pannu conceived significant aspects of the invention, Pannu is certainly at least a co-inventor." Id. at 1351. The bankruptcy court found, however, that "even if the Court was to give weight to the overall appearance of the Design Patent, including the well-known concepts and functional aspects proposed by Mr. Coffee, the Court finds that Mr. Coffee's contribution to the Design Patent was not significant in quality when measured against the dimension of the full invention." The district court upheld that finding, holding that the bankruptcy court, as fact-finder, was not clearly erroneous in concluding that Mr. Coffee employees were not joint inventors, inasmuch as the patented design was "substantially similar" to the original version submitted by Mr. Sham, and the modified design did not contain any "inventive concept" that was absent from the original.

Sunbeam argues that the district court applied the wrong test when it ruled that the "improved design must contain an inventive concept." We disagree. In Hoop v. Hoop, 279 F.3d 1004, 1007 (Fed. Cir. 2004), we stated that "minor differences between the prior art and the new claim will not suffice" to make the person who suggested the changes that resulted in the differences an inventor. We added that the differences

"must be substantial and not just superficial; the new design must contain an inventive concept." Id. The district court therefore did not err by employing the "inventive concept" test. Furthermore, the bankruptcy court found that the Mr. Coffee employees' contributions were not significant, considering the overall appearance of the coffeemaker as well as the limited and mainly functional nature of the suggested changes. In Hoop, we also articulated the ultimate test for design patent inventorship to be "whether the second asserted invention is 'substantially similar' to the first." Id. (citations omitted). In particular, as a result of the changes to the design of an eagle-shaped motorcycle fairing guard made by the party claiming inventorship, the new fairing design had a noticeably different visual appearance. See id. at 1006 (Figures 1 and 3). In that case, we agreed with the trial court that the party claiming inventorship was likely not an inventor because the new fairing design had "strong similarities" to the drawings provided to that party by the inventor. Id. at 1008. In the present case, the changes suggested by Mr. Coffee are no more significant than those made by the party claiming inventorship in Hoop. Accordingly, we affirm the bankruptcy court's ruling that Mr. Coffee was not a joint inventor of the '585 patent.

IV

Although the district court agreed with the bankruptcy court that the Mr. Coffee employees were not joint inventors, it disagreed with the bankruptcy court's finding that the AD10 design was not "jointly developed" by Wing Shing, as that term was used in the agreement. The district court therefore concluded that Wing Shing had breached its contractual obligation to negotiate patent rights prior to filing a patent application on the AD10. However, both courts held that the statute of limitations period began to run

04-1526,-1537                                    8

when Wing Shing breached the contract by filing the '585 patent application without first negotiating patent rights with Sunbeam in July of 1992, and that it expired in 1998, at least two years before this case was filed. Thus, both courts held that Sunbeam could not prevail on its contract-based claim.

Sunbeam now argues, for the first time on appeal, that equitable tolling should suspend the running of the statute of limitations. Its argument, however, runs afoul of the rule that arguments not made in the court whose order is under review are normally considered waived. See, e.g., Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1368 (Fed. Cir. 2004). Sunbeam claims that it preserved the equitable tolling argument by raising the issue in its "Reply Post-Trial Memorandum of Law" filed with the bankruptcy court. The argument that Sunbeam points to, however, was not based on equitable tolling, but instead was based on New York state law principles of claim accrual. Sunbeam argued that under New York law, a cause of action against a patentee does not accrue when the patent application is filed, but only when ownership of the patent is in dispute. Therefore, Sunbeam contended, "the earliest date upon which Sunbeam's cause of action accrued was [1995], and the statute of limitations did not expire before Sunbeam filed the instant suit." The bankruptcy court rejected Sunbeam's accrual argument on the ground that the breach of contract claim in this case was not tied to the dispute as to the patent's ownership, but was based on Wing Shing's alleged failure to comply with its agreement to negotiate patent rights with Mr. Coffee before filing a patent application. That promise, the court explained, was breached, if at all, on July 13, 1992, when Mr. Sham filed his patent application. The

argument to which Sunbeam directs us is not an equitable tolling argument, and it therefore did not serve to preserve that issue for appeal.

In a portion of the same brief before the bankruptcy court, Sunbeam made a separate argument that Wing Shing's "conduct and misrepresentations" caused Sunbeam to fail to file its action in a timely fashion and that Wing Shing should therefore be estopped from relying on the statute of limitations as a defense to the breach of contract claim. The bankruptcy court, however, noted that Sunbeam conceded that it was aware, or should have been aware, of the '585 patent by March 1995 at the latest, and that Sunbeam was therefore not prevented from filing a timely action for breach of contract. Accordingly, the bankruptcy court rejected Sunbeam's "estoppel" argument. Sunbeam's second argument is similar in some respects to the equitable tolling argument that Sunbeam makes on appeal. It differs, however, in that the estoppel doctrine invoked by Sunbeam before the bankruptcy court requires the plaintiff to show that the action was brought within a reasonable time after the facts giving rise to the estoppel ceased to be operational. See Simcuski v. Saeli, 377 N.E.2d 713, 717 (N.Y. 1978). The bankruptcy court held that Sunbeam failed to meet that burden, and Sunbeam has not challenged that finding on appeal. The estoppel doctrine that Sunbeam raised at trial is sufficiently distinct from the argument that Sunbeam now presses upon us that we cannot agree with Sunbeam that the equitable tolling argument was fairly presented to the trial court. We therefore decline to address the equitable tolling argument that Sunbeam raises for the first time on appeal.[2] Because we agree

---

[2] We also decline to address Sunbeam's equitable recoupment claim, which is made for the first time on appeal.

with the bankruptcy court and the district court that the statute of limitations period had expired by the time Sunbeam brought this action and because Sunbeam does not argue that it could not reasonably have filed its breach of contract action between the time it learned of the alleged breach (in 1995) and the time the limitations period expired (in 1998), we do not reach the question whether Sunbeam was a joint developer of the AD10 or, if it was, whether Wing Shing breached its obligation to negotiate patent rights prior to filing the '585 patent application.

V

Sunbeam argues that Wing Shing should be equitably estopped from claiming that Sunbeam infringed the '585 patent, and that the bankruptcy court misapplied the legal standards of equitable estoppel in this case. In order for an equitable estoppel defense to bar a patent infringement claim, the alleged infringer must show that: (1) the patentee led the alleged infringer to reasonably infer that the patentee would not enforce its patent; (2) the alleged infringer relied on that conduct; and (3) the patentee suffered material injury as a consequence of that reliance. A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992).

Sunbeam complains that Wing Shing led it to believe that Wing Shing would not enforce its patent and that it relied on that representation to its prejudice. Sunbeam relies in particular on the March 1995 telefax in which Wing Shing stated the following, in response to Mr. Coffee's direction to transfer tooling for the AD10 to another manufacturer: "[I]t's a [sic] bad news to us. However, you own this tooling and we will have no objection if you decide to do so. We feel very disappointed on [sic] your suggestion. Our long term business relationship will then be hurt badly when it really

happens. . . . However, the important point is that we have the product design patent of AD10 and was being filed [sic]. That means, we can sell and we will sell the same product to other customers in the same market."

Sunbeam contends that the March 1995 telefax lulled it into believing that Wing Shing had no objection to Mr. Coffee transferring the production of the AD10 to another manufacturer and that it would not thereafter seek to enforce its design patent, but at most would seek to promote the design among Mr. Coffee's competitors. The bankruptcy court, however, concluded that Mr. Coffee was not misled by that telefax into believing that Wing Shing would not sue for patent infringement. The court alluded to evidence, in the form of internal communications among Sunbeam officers noting that Wing Shing owned the design patent for the AD10, that "[i]t likely WILL be an issue if we part ways with them," and that the design of the AD10 might have to be changed "to avoid any patent issues. TDB [sic: to be determined?]." Based on that evidence, the bankruptcy court concluded that "rather than being led to believe that Wing Shing was not going to pursue an infringement claim, Sunbeam was in fact concerned that the Design Patent might potentially become an issue of contention should Sunbeam cease doing business with Wing Shing," and that Sunbeam even considered reworking the AD10 design to avoid a possible infringement claim. Accordingly, the bankruptcy court concluded "that Sunbeam was not misled by Wing Shing's conduct, and that Sunbeam was aware of and had discussed internally the potential danger of a patent infringement action being brought by Wing Shing at some future date."

The district court held that there was sufficient evidence to support the bankruptcy court's finding that "Wing Shing did not engage in conduct sufficiently

misleading for Sunbeam to reasonably infer that Wing Shing would not enforce its patent rights." With respect to the internal Mr. Coffee communications, the district court noted that it was "clear from the opinion that the Bankruptcy Court found that Wing Shing's conduct, including the March 1995 fax from Wing Shing to Mr. Coffee, was not misleading and, more specifically, that Sunbeam did not rely on and was not misled by any such conduct." Although the evidence on this point is subject to different possible interpretations, we agree with the district court that the bankruptcy court, as fact-finder, did not commit clear error in finding that Sunbeam was not misled into believing Wing Shing would never enforce its patent and that the March 1995 telefax did not lead Sunbeam to believe that Wing Shing would not look to enforce its patent at some point in the future. Because equitable estoppel does not apply if the alleged infringer fails to prove the existence of both misleading conduct and actual reliance on that conduct, we uphold the district court's ruling rejecting Sunbeam's equitable estoppel defense.

VI

Wing Shing appeals from the bankruptcy court's ruling that its failure to provide notice of infringement bars it from recovering damages for infringement prior to the date suit was filed. The Patent Act provides that if a patentee does not mark the patented article, the patentee cannot recover damages unless he shows that the infringer was actually "notified of the infringement and continued to infringe thereafter." See 35 U.S.C. § 287(a); see also SRI Int'l, Inc. v. Advanced Tech. Labs., Inc., 127 F.3d 1462, 1470 (Fed. Cir. 1997). The purpose of the notice requirement is to ensure that the accused infringer is aware of the patent during the period in which liability arises and damages accrue. Id. Wing Shing neither marked its coffeemakers with the patent

number nor provided adequate notice to Sunbeam that it was infringing the '585 patent. Wing Shing argues that it gave Sunbeam notice of infringement at a trade show in 1996 when Mr. Sham allegedly told a Sunbeam employee that "we have the product design patent and [Sunbeam] should not buy from anybody else, but should buy from us." The bankruptcy court rejected Mr. Sham's uncorroborated testimony about that alleged communication on credibility grounds. As the district court explained, the bankruptcy court "was in the best position to judge the credibility of witnesses and determine whether testimony was credible." Like the district court, we decline to upset the trial court's credibility finding. We also agree with the district court that the bankruptcy court "did not commit clear error in determining that Wing Shing failed to provide constructive or actual notice to Sunbeam and, therefore, is precluded from the recovery of pre-suit claims." Because we hold that the notice issue disposes of Wing Shing's claim for pre-suit damages, we follow the same course as the district court and decline to address whether the bankruptcy court erred in holding that the doctrine of laches also bars Wing Shing from recovering pre-suit damages.

VII

Finally, Wing Shing complains that the bankruptcy court erred in allowing Sunbeam to deduct certain fixed costs, allocated to the sales of the AD10 coffeemakers, when calculating Sunbeam's profits on the infringing units. The amount of damages is a finding of fact reviewed under the clearly erroneous rule. Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1577 (Fed. Cir. 1992). However, certain subsidiary decisions, "such as choosing between reasonable alternative accounting methods for determining profit margin" are discretionary with the

trial court and are reviewed under the abuse of discretion standard. Id.; SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1165 n.2 (Fed. Cir. 1991).

In this case, the bankruptcy court found that some fixed costs were properly attributable to the infringing coffeemakers and other fixed costs were not. In addition, the court refused to deduct those fixed costs that the court concluded Sunbeam had failed to show were related to the production of the infringing products. The court found that the fixed costs that were deductible were "directly related to the AD Coffeemakers, and that the AD Coffeemakers could not have been brought to market without them." While Wing Shing argues that the evidence did not justify the court's conclusion that those costs were related to the cost of selling the infringing units, Sunbeam introduced some documentary and testimonial evidence about the various categories of expenses, and the bankruptcy court analyzed the categories in question with care.

Although the evidence available to the court on this issue was somewhat limited, we nonetheless agree with the district court that there was sufficient evidence for the bankruptcy court to make a reasonable determination of the costs associated with the sale of the AD10 units. The court's ruling on that issue was thus not clearly erroneous. We also agree with the district court that the bankruptcy court made "reasonable determinations as to what categories and portions of items should be included and what costs should be deducted in calculating Sunbeam's profit." Thus, the bankruptcy court did not abuse its discretion by employing a methodology that included certain cost items that Wing Shing argues should not have been deducted in calculating Sunbeam's profits on the infringing products.

Each party shall bear its own costs for this appeal.